CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOSE CEBALLOS, on behalf of himself and others : Case No. 23-CV-524
similarly situated, :
:
Plaintiff, : **FLSA COLLECTIVE**
: **ACTION COMPLAINT**
-against- :
: **Jury Trial Demanded**
MONTAUK BULK CARRIERS INC., MONTAUK :
BULK TRANSPORTATION LLC, MUTLU KOCAL, :
and USTUN O. KOCAL a/k/a AUSTIN KOCAL, :
:
Defendants. :
-----------------------------------------------------------------X

Plaintiff JOSE CEBALLOS (hereinafter, "Plaintiff"), on behalf of himself and other similarly situated employees, by and through their undersigned attorneys, Cilenti & Cooper, PLLC, files this Complaint against defendants MONTAUK BULK CARRIERS INC., MONTAUK BULK TRANSPORTATION LLC (collectively, the "Corporate Defendants"), MUTLU KOCAL, and USTUN O. KOCAL a/k/a AUSTIN KOCAL (collectively, the "Individual Defendants"), and states as follows:

### INTRODUCTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), he is entitled to recover from Defendants:

(a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) liquidated damages, (c) prejudgment and post-judgment interest, and (d) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

5. Plaintiff is a resident of Suffolk County, New York.

6. Defendant, MONTAUK BULK CARRIERS INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 3502 Horseblock Road, Medford, New York 11763.

7. Defendant, MONTAUK BULK TRANSPORTATION LLC, is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business at 3502 Horseblock Road, Medford, New York 11763.

8. The Corporate Defendants own and operate a licensed and Department of Transportation registered intrastate trucking and freight company, which delivers

2

hazardous gases and liquids to purely local gas stations and business solely within the State of New York.

9. The Corporate Defendants purchase their liquids and gases for delivery from third-party entities and terminals located solely within the State of New York.

10. Defendant, MUTLU KOCAL, is the President, officer, shareholder, director, manager, supervisor, and proprietor of MONTAUK BULK CARRIERS INC. who participates in the day-to-day operations of the corporation and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MONTAUK BULK CARRIERS INC.

11. Defendant, MUTLU KOCAL, is a member, owner, manager, supervisor, and proprietor of MONTAUK BULK TRANSPORTATION LLC who participates in the day-to-day operations of the company and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MONTAUK BULK TRANSPORTATION LLC.

12. Defendant, USTUN O. KOCAL a/k/a AUSTUN KOCAL, is the manager, supervisor, and operator of MONTAUK BULK CARRIERS INC. who participates in the day-to-day operations of the corporation, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated

3

thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MONTAUK BULK CARRIERS INC.

13. Defendant, USTUN O. KOCAL a/k/a AUSTIN KOCAL, is a manager, supervisor, and operator of MONTAUK BULK TRANSPORTATION LLC who participates in the day-to-day operations of the company, and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with MONTAUK BULK TRANSPORTATION LLC.

14. The Individual Defendants exercise control over the terms and conditions of their employees' employment in that they have the power to and do in fact: (i) hire and fire employees, (ii) determine and approve rates and methods of employee pay, (iii) determine and approve employee work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

15. At least within each of the three (3) most recent years relevant to the claims herein, MONTAUK BULK CARRIERS INC. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

16. At least within each of the three (3) most recent years relevant to the claims herein, MONTAUK BULK TRANSPORTATION LLC was, and continues to be,

4

an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

17. Defendants employed Plaintiff to work as a non-exempt driver and delivery worker from in or about June 2020 until on or about January 12, 2023.

18. The work performed by Plaintiff was directly essential to the business operated by Defendants.

19. Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

20. Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

21. The Individual Defendants actively participate in the day-to-day operation of the Corporate Defendants. For instance, they personally hire and fire employees, assign the drivers their routes and responsibilities, act as dispatcher, supervise and direct the work of the employees, and instruct the employees how to perform their jobs.

22. The Individual Defendants jointly create, implement, and approve all business policies and makes all crucial business decisions, including decisions concerning the minimum and maximum number of hours the employees are required

work, the amount of pay that the employees are entitled to receive, and the manner and method by which the employees are to be paid.

23. The Corporate Defendants are associated as a single enterprise, utilizing Plaintiff in a fungible and interchangeable manner as workers in the business operated by Defendants.

24. The Corporate Defendants each engage in related activities, namely, providing freight services to the general public for profit. The Corporate Defendants shared Plaintiff and other similarly situated employees, acted in the interest of each other with respect to employees, paid their employees by the same plan or scheme, and are under common control.

25. The Corporate Defendants are controlled by the same owner or owner group, operating as a unified operation and, upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and, therefore, may be treated as a single enterprise.

26. In or about June 2020, Defendant USTUN O. KOCAL a/k/a AUSTIN KOCAL hired Plaintiff to work as a non-exempt driver and delivery worker.

27. Neither at the time of hire nor anytime thereafter did Defendants provide Plaintiff with a written wage notice setting forth his regular hourly rate and corresponding overtime rate of pay.

28. Plaintiff worked for Defendants in such capacity until on or about January 12, 2023.

29. Plaintiff worked over forty (40) hours per week.

6

30. From the beginning of his employment and continuing through in or about December 2021, Plaintiff worked five (5) days per week (Monday through Friday) and, although his work shift fluctuated slightly each week, it normally consisted of twelve (12) to fourteen (14) hours per day from 5:00 a.m. or 6:00 a.m. until 6:00 p.m. or 8:00 p.m.

31. During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $34 per hour straight time for all hours worked and worked between sixty (60) and eighty-four (84) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

32. Beginning in or about January 2022 and continuing through in or about June 2022, Defendants transferred Plaintiff to the day shift. During this period, Plaintiff worked five (5) days per week (Monday through Friday) and, although his work shift fluctuated slightly each week, it normally consisted of thirteen (13) hours per day from 5:00 a.m. until 6:00 p.m.

33. During this period, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $34 per hour straight time for all hours worked and worked sixty-five (65) hours per week (and sometimes more). Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

34. Beginning in or about July 2022 and continuing through the remainder of his employment on or about January 12, 2023, Defendants transferred Plaintiff back to the night shift. During this period, Plaintiff worked five (5) days per week (Monday through Friday) and, although his work shift fluctuated slightly each week, it normally

7

consisted of twelve (12) to fourteen (14) hours per day from 5:00 a.m. or 6:00 a.m. until 6:00 p.m. or 8:00 p.m.

35. Beginning in or about July 2022 and continuing through in or about December 25, 2022, Plaintiff was not paid proper overtime compensation. During this period, Plaintiff was paid at the rate of $34 per hour straight time for all hours worked and worked between sixty (60) and eighty-four (84) hours per week. Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half as required by state and federal law.

36. Defendants failed to pay Plaintiff any wages for the period between December 26, 2022 and the remainder of his employment on or about January 12, 2023.

37. Upon receiving his wages each week, Defendants failed to provide Plaintiff with a written wage statement setting forth, among other things, his gross wages, deductions, and net wages.

38. Plaintiff's work hours were memorialized in written daily dispatch sheets, which show the time that Plaintiff's shift time started and concluded.

39. Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

40. At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient time records.

## COLLECTIVE ACTION ALLEGATIONS

41. Plaintiff brings this action individually and as class representative on behalf of himself and all other current and former non-exempt employees who have been or were employed by Defendants since January 25, 2020 until the close of the opt-in period as ultimately set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

42. The collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

43. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

44. This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of

either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

45. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

46. Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

    a. Whether Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

    b. Whether Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

    c. What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

  d. Whether Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

  e. Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

  f. Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

47. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

48. Plaintiff and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

49. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "48" of this Complaint as if fully set forth herein.

50. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

51. At all relevant times, Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA.

52. At least within the three (3) most recent years relevant to the allegations herein, MONTAUK BULK CARRIERS INC. has had gross revenues in excess of $500,000.

53. At least within the three (3) most recent years relevant to the allegations herein, MONTAUK BULK TRANSPORTATION LLC has had gross revenues in excess of $500,000.

54. At least within the three (3) most recent years relevant to the allegations herein, the Corporate Defendants have jointly had gross revenues in excess of $500,000.

55. Plaintiff and the Collective Action Members were entitled to be paid at the statutory rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

56. Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

57. At all relevant times, Defendants had, and continues to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

58. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Action

Members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of overtime compensation would financially injure Plaintiff and the Collective Action Members.

59. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201 *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

60. Defendants failed to properly disclose or apprise Plaintiff and the Collective Action Members of their rights under the FLSA.

61. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

62. Due to Defendants' intentional, willful and unlawful acts, Plaintiff and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

63. Plaintiff and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

64. Plaintiff re-alleges and re-avers each and every allegation and statement contained in paragraphs "1" through "63" of this Complaint as if fully set forth herein.

65. At all relevant times, Defendants employed Plaintiff within the meaning of New York Labor Law §§ 2 and 651.

66. Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiff overtime compensation at rates of not less than time and one-half for each hour worked in excess of forty (40) hours in a workweek.

67. Defendants failed to furnish Plaintiff with a statement with every payment of wages listing gross wages, deductions, and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations §§ 142-2.7.

68. Defendants failed to notify Plaintiff of his regular hourly rate of pay and corresponding overtime rate of pay, any tip credits or deductions taken, and their regular designated payday, in contravention of New York Labor Law § 195(1).

69. Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

70. Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 142-2.6.

71. Due to the Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al.* and § 198.

72. Plaintiff is also entitled to liquidated damages pursuant to New York Labor Law § 663(1).

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiff JOSE CEBALLOS, on behalf of himself and all similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

(a) An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(b) An award of liquidated damages as a result of failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

(c) An award of liquidated damages as a result of Defendants' failure to pay overtime compensation pursuant to the New York Labor Law;

(d) An award of statutory damages for Defendants' failure to provide wage notices and weekly wage statements in violation of the New York Labor Law and the New York Wage Theft Prevention Act;

(e) An award of prejudgment and post-judgment interest;

(f) An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and,

(g) Such other and further relief as this Court determines to be just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues.

Dated: New York, New York
January 25, 2023

                                          Respectfully submitted,

                                          CILENTI & COOPER, PLLC
                                          *Attorneys for Plaintiff*
                                          60 East 42nd Street – 40th Street
                                          New York, New York 10165
                                          T. (212) 209-3933
                                          F. (212) 209-7102

                                          By: _____
                                                 Giustino (Justin) Cilenti (GC2321)

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Jose Ceballos, am an individual currently or formerly employed by Montauk Bulk Carriers and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
       January 13, 2023

_____
Jose Ceballos